Good morning. May it please the Court. My name is William Cohn, KOHN, and I represent the plaintiffs Dr. Bommiasamy and his professional corporation. In this appeal, we are asking this Court to determine that the District Court abused its discretion by essentially failing to require that the Defendant's Counsel demonstrate that they undertook appropriate subject matter jurisdiction inquiry at the outset of the case. So it's a high barrier for you because you agree, and I think correctly, that sanctions under 1927 are a matter of discretion. And the District Court doesn't think that there was any misbehavior in this circumstance, that she finds it understandable that maybe this got delayed. And so you could win, I think, only if there were some unwaivable duty on the part of the Defendant to make out the plaintiff's jurisdictional burden for them. Why does the Defendant have that burden, and what case supports that? Your Honor, it is absolutely a high burden, and I think the case law we've cited does demonstrate that it is always a, even a defense counsel's, and especially a defense counsel's, burden to inquire of the jurisdiction of the domicile, pardon me, of their own individual client. Because that is something, because domicile, as you know, encompasses this dual inquiry of both objective and subjective. That's something that, as in this case, a plaintiff can never know. But the Defendant, inquiring of his client, especially as in this case when Mr. Mendelson admirably admitted in his affidavit that he knew the Defendant, Dr. Parikh, had retained his Illinois residence. But people have residences all over the country. I mean, it seems that Dr. Bumyasamy was in a couple of different places. You've got him in Illinois, you've got him in Indiana, he's working out of Texas for a while. You mean Dr. Parikh? Oh, sorry, Dr. Parikh. He's in Texas for a while, and the fact that you own property in a state doesn't necessarily mean you're domiciled there. No, but it raises, I think additionally raises, the possibility that someone who moves out of state for work, when his counsel knows he retains his residence, may intend to move back to his original home state. But the point is the district judge finds this is kind of a messy situation, that there is an initial conversation, and that there's no bad faith in this, and just doesn't think it's sanctionably bad. It doesn't mean that she's trying to keep the case over this. It's just a sanctions issue. Did his lawyer ask him what state he's a citizen of? Well, no, and that also goes to Judge Woods. Where he pays taxes, for example. I think that's correct, and that goes to Judge Woods' comment. I don't think the district court found or could have reasonably found, based on the affidavit, that there was that sort of inquiry. I think if you look at Mr. Mendelson's affidavit, he says, Mr. Marks and I advised the doctor of the basis for suing in federal court. If you tell a medical doctor they sued you in federal court because you lived in Indiana, the doctor's not going to know if that means previously, currently, when that ends, when that begins. They are clear. They did not ask him at the time of the filing of suit, where do you currently reside or where do you intend to return? There was none of that discussion, and I am submitting under the case law we've cited, first of all, Johnson v. Wattenberger, that it's a litigant's first duty in every case to determine subject matter jurisdiction. And then, I think crucially, the cases that we actually cited in our circuit rule 28E letter, where they talk about defendants cannot assume jurisdiction, they must investigate it as well, especially that Bellevue catering case. When you put all that together and you realize that the defendant or defense counsel is the only gatekeeper of the defendant's domiciliary intent, a plaintiff can never know that until they get to court. And yes, a plaintiff can be wrong, and when defense counsel realizes that, he can send me a Rule 11 letter or call me up, as some of the cases suggest, and say, Cohen, I think you got it wrong, because my client tells me he's sold his Indiana house and he's in the process of closing and he intends to move back to Illinois. All of that may be so, but first of all, it's the plaintiff's burden of proof to establish jurisdiction. The district court here, you must be taking issue with this standard, because what the district court here says is that it sees no serious and studied disregard. So maybe that's the wrong standard, we'll see. But she points out that Dr. Preef's attorney's represented for years in the state court, he's domiciled in Indiana for a long time, they communicate largely by email, which could be from the top of Mount Everest, as far as I know. And so, whether he comes back to Illinois with the intent to stay forever or not, isn't something that's front and center. She's a little discouraged, she wasted all this time on preparing a race judicata memorandum too, but just doesn't see this as sanctionable. In answer to your question, I don't take issue with the recitation of that portion of the standard that the district court quoted. I think that's an incomplete recitation of the panoply of standards, but I do respectfully take issue with the district court's inquiry, because the district court ends up saying, in this era of electronic communication, it's not surprising that counsel's attention wasn't drawn to Dr. Preef's return. That, I think, is the wrong inquiry. I think if your cases, if this court's cases mean anything, you can't wait to be drawn to something, you have to make an affirmative inquiry. Where do you live, because they just sued you in federal court rather than in Peoria, where we used to litigate this case and no longer litigate it. I'm saying that's a threshold inquiry, and I think the case law that we've cited contains ample discussion about procedural gaps can sometimes lead to Section 1927 sanctions, and the oft-quoted language that if a reasonable attorney wouldn't have gone down this path after inquiry, that can lead to Section 1927. So you actually think there are automatic sanctions under 1927 every time a defense lawyer fails to uncover a jurisdictional flaw? No, and let me qualify that. I think in this case, the failure to ask and the district court's failure to focus on that demonstrates an erroneous legal conclusion which allows this court to review that, but I think I would argue for a per se rule, if you don't bother to ask, you open yourself up to sanctions. And I don't think the district court properly analyzed the inquiry here, and I'd like to reserve some time for rebuttal. Would the gravity of the error by the lawyer, would that properly influence the amount of sanctions? I've certainly seen cases where district courts have imposed sanctions in a certain amount, and the appellate court has seen fit to reduce them, but I think if we're to take this court's jurisprudence at its word that that is a threshold inquiry, the failure to undertake that inquiry always has a potentially grave consequence, such as in this case where you undertake meritorious briefing on merits issues when there's no jurisdiction. Have you asked, have you named a price, so to speak, based on any additional work you had to do? I think all the work that was done, which was briefing on the substantive race judicata motion, was unnecessary. But, I mean, have you priced that out? We engaged in a court-mandated settlement conference in this court, and we discussed independently, but I haven't had an opportunity to engage opposing counsel directly in that respect. Thank you. Thank you, Your Honors. Thank you. Mr. Marks. Good morning. May it please the Court, my name is Alex Marks, and Mr. Mendelson is also sitting at counsel's table. As Your Honors correctly pointed out, counsel has a very high standard here because it is a base of discretion. And why is that? There's two high standards. Where did this phrase, objectively, unreasonably manner, come from? And it requires evidence of either objective or subjective bad faith? Yes. What is objective bad faith? Certainly, Your Honor. The Seventh Circuit has interpreted 1927 to require vexationist and unreasonable conduct on the part of an attorney. Normally, it's aimed at plaintiff's attorneys who are dilatory or have some sort of intentional heightened misconduct, which delays a case. The court has, the Seventh Circuit, has later interpreted the word vexatious to be conduct that goes beyond what is considered unreasonable and requires that a party act in either... Goes beyond what is unreasonable? Beyond... It's unreasonable squared or something? Yeah. Well, it's a very high standard, Your Honor. Why? Because you're... Why is it a very high standard? It's looking at not negligence... Well, a lawyer screws up and imposes costs on the other party. Why should there be a high standard? Well, I take issue that we screwed up, Your Honor. I was on the call with the client. I'm not talking about that. I'm asking about the standard. Certainly. With the standard... If a lawyer screws up and imposes costs on the other side, why shouldn't sanctions be imposed? Because under Section 9... I get all this objective, subjective bad faith. I mean, objective bad faith sounds like a contradiction in terms. Well, because under Section 1927, it's looking basically at some sort of intentional misconduct that causes harm on the other side. It's not something that's negligent. I don't understand that. You can do a lot of harm to people with negligent misconduct. And the court... And there should be no sanction? No. There's something sacrosanct about lawyers? No. So even when they're negligent, they don't pay any price for it? The Seventh Circuit has explicitly found in multiple cases that Section 1927 doesn't apply to mere negligence. Why not? Suppose you're negligent. And as a result of your negligence, you impose very substantial costs on the other side. Now, you're not deliberate or anything. You're just negligent. You're just a bad lawyer or something. You impose those costs. We usually create sanctions. We provide compensation for victims of negligence. Why not in this situation? Well, because it's not a tort, Your Honor. It is a tort. Negligence is a tort. Of course it's a tort. No, but it's not applying to conduct that harmed litigant. So what? It's applying to conduct by a professional person that harms another person without justification because this person is careless. And of course you should have sanctions for that. Give me a reason why you shouldn't have a sanction for that. Well, I'll address it in three parts, Your Honor. Number one, again, I understand this is not what you're getting at with your question. But, again, I take issue with any implication that somehow there was misconduct or negligence on our part because there wasn't. We had extensive conversations with the client about it. He failed to alert us to that fact. And the minute he did, we did an investigation and brought it immediately to the court. Miscommunication happened. Mistakes happened. Clients are not responsive. I'm interested in your proposition that mere negligence by a lawyer that caused harm to another lawyer shouldn't be actionable. Well, it's not my proposition. It's how the Seventh Circuit has interpreted it. But if you want my take on why the courts have interpreted that, it's because I think in the fog of war, so to speak, or in litigation, things happen. Sometimes it can be negligence. Sometimes it can be invertence. Sometimes it can be by mistake where cases get delayed. And it's not always – the harm caused doesn't necessarily always mandate sanctions. Look how silly that is. Suppose I said to you, you know, in the course of driving, negligence occurs. People are careless. It's just one of those things. So we shouldn't have liability for negligence. It's just the sort of thing that happens in driving, in practicing law, in doing everything, right? Well, I suppose under your Honor's hypothetical, the difference would be a driver who acts negligently that causes harm to an individual. Look, suppose he just causes harm to offender. I'm sorry. Suppose he causes harm to offender, not to an individual. Nevertheless, that's actionable. That's a tort, damaging someone's property. And I think, Your Honor, what you're getting at is there's also a tort for attorney malpractice if a party's been harmed. But separately, this is a rule, a sanction statute that applies to a litigant's conduct before the court. Well, the statutory phrase is unreasonably and vexatiously. So we have to understand, going back to the basics, you know, what does it mean when you add the word vexatiously to the word unreasonably? If the only word there were unreasonably, you might be going down a negligence-based path. Exactly, Your Honor. And that's what the court, and this is the Kotzrillis case, the Seventh Circuit precedent, has said is interpreted vexatious as conduct that goes beyond what is considered unreasonable and requires a party act in either a subjective or objective bad faith, as Your Honor was pointing out. The process is somewhat different from just bringing a tort lawsuit in court. The burdens of proof are different. Correct. What does vexatious mean? Certainly. Well, that quote that you pointed to, the courts have then taken in terms of requires a party act in either subjective I'm just asking you what the word vexatious means. Oh, I think it's very clear. Vexatious means you do something intentional. It's heightened misconduct. It's something where you go out of your way to cause a party to be delayed or mislead the court or something along those lines. I think the case that is probably closest in an analogous fashion is the Itell Containers case, which is a District of New Jersey case. In that case, the defendant willfully pursued a strategy of concealing diversity jurisdiction, hoping that the statute of limitations would run. The word vexatious just means annoying. I'm sorry? The word vexatious just means annoying. There's a deliberate overtone to it. You're probably... I don't think so. The courts have not interpreted vexatious to simply mean annoying respectfully, Your Honor. It goes beyond what is considered unreasonable. The subjective and objective dichotomy then further breaks that out, and the courts have said if the party's action, and here it's an alleged omission, not bringing a motion sooner, but if a party's action had at least a colorable basis to it, you have to have some sort of subjective bad faith. If you don't have that, there is no colorable basis for some sort of action, which here the district court found that there was. It was no surprise. We were not alerted to the fact that our court returned it. But there's this animal called objective bad faith, which implies that you're not intentional, right? Objective bad faith? I think what the courts have said there is you take some sort of action. If there was a good faith basis for taking that action, then you have to have some sort of subjective bad faith, meaning I think what they're doing out there is... No, it says objective or subjective bad faith. Understood. So tell me what objective bad faith is. Sure. Objective bad faith is you don't need malice. You need some sort of reckless indifference to the law. You pursue a path that you knew was never going to be successful. Anybody would think it's bad faith. It doesn't matter if you thought it was bad faith. Anybody would. That is correct, Your Honor. Maybe you could spend one second elaborating on why you don't think your activity here warrants sanctions. Certainly, Your Honor. There were several facts at the time this suit was filed where we had no basis to have any understanding our client had moved back, and then we took further action investigating that, still had no understanding our client had moved back, and as the district court found in her discretion, it was no surprise we were not alerted to the fact of his return to Illinois. Here were the facts. He had been living in Indiana for five years at the time this suit was filed. The district court found he was clearly domiciled in Indiana at the time. He had an Indiana phone number. His email had changed. His bills were still being sent to the Indiana address. We had no communications at the time that he had not moved back because he was living out of state. We obviously were not meeting in person with him and had any notion that he somehow had moved back. Further, more importantly, and this is what counsel consistently ignores, and I think he's misrepresented the court, that we somehow did not have some sort of a conversation with our client, and I think he is implying that you have some sort of per se standard if you somehow miss a jurisdictional argument off the bat. But when we received a notice of the federal lawsuit, and I was on this phone call, we contacted the client. We alerted him to the fact that there was a new lawsuit filed in federal court. We alerted him. We explained the basis for suit in federal jurisdiction. You're living in Indiana. The plaintiff is living in Illinois. They're alleging more than $75,000 on the breach of contract, which would provide for diversity of jurisdiction. We explained the nature of diversity of jurisdiction in general and why that allowed him to file suit in federal court, even though we've been litigating for almost a decade in Peoria County. And more importantly, we then said, counsel has requested that we accept service on your behalf and waive formal service of summons of you, and if you don't do this, a sheriff's going to show up in Indiana and you're going to be served in Indiana. For whatever reason, inexplicable or otherwise, and I think largely in part because our client has English as a second language to him, we covered this ad nauseum on this call, and he agreed to accept service, for us to accept service on his behalf. He didn't mention, oh, by the way, I'm not living in Indiana anymore. I've moved back to Illinois. None of this was alerted to us until almost a year later, and in fact, he didn't even contact our firm until six months after this lawsuit had been filed to change the billing address. We weren't notified of it. He contacted a legal assistant who didn't pass it up along, but alerted a legal assistant, by the way, I moved. Could you change the billing address? So we had no reason to know this. You mean you had no contact with him for a year? No, we had contact with him, but we had the initial conversation with him about living in Indiana. But wouldn't that contact indicate his address or his phone number or something? Well, the way the bills are mailed out in our firm, I don't hand write out a bill and mail it to him addressing the address. That's what the accounting department does. We certainly had contact about the lawsuit and what was going on. And it wasn't until six months later that the bill goes out to an Illinois address, not an Indiana address? Correct. And otherwise, you're in contact with him by email? Email or phone. And I was on multiple of the conversations, and I can assure you there was no negligence, there was no inadvertence, and there was certainly nothing. And has his phone number changed? It didn't change. And again, he had a 219 phone number, which was northwest Indiana, is where that area code is. So there was nothing at all that would have alerted to us, and that's what the district court found, and she's entitled to that discretion. I would like to note, I see I'm out of time, I just want to note. You can finish your thought. I just do want to note, because I think this is important, Mr. Mendelson, I've been an attorney for 12 years. Mr. Mendelson has served as a mentor and a colleague to me nearly my entire legal career, and I would be remiss with this opportunity if I didn't know for the record that I think he's wholly undeserving of the allegations that counsel has bandied about, both the district court and this court, of some sort of malfeasance or misconduct. There was nothing of the sort. I was on those phone calls. We did our job. Our client didn't tell us he had moved back to Illinois, and the minute we found out we alerted the district court. There's simply nothing in the record to sanction him. There's nothing in the record that satisfies 1927, and there's certainly nothing in the record that would satisfy an abusive discretion standard. I appreciate your time this morning. Thank you, Mr. Marks. Mr. Cohn, anything further? Initially, Your Honors, I think it's fair to say that Mr. Marks goes beyond the bounds of the affidavit when he starts talking about the conversation he had with the client. The affidavit speaks for itself, and as Judge Posner asked me earlier, does it say that he, Mr. Mendelson, conducted any direct inquiry, where do you live? It doesn't. There was assumption. I understand that. But if there is not a rule that defense counsel should directly inquire to confirm jurisdiction, there is the danger that this can happen in many cases, and I think this court wants to guard against that. The Cotsalieras case, I think there's a misrepresentation about what it holds. It holds very clearly that if lawyers recklessly pursue a path that a reasonably careful attorney would have avoided, that is considered objectively unreasonable and vexatious. No malice or ill will is required. It's a heightened negligence standard. Yes, the cases say ordinary negligence doesn't typically suffice, but extreme negligence or recklessness does, and our position before this court is failing to inquire of your own client because you're the only one who has the opportunity to do that, there were no depositions here. There was no discovery. There was a motion to dismiss. If you're the only one who has the opportunity to do that, then it's reckless not to do that. All right. Thank you very much, Mr. Cohn. Thank you, Your Honors. We would ask that you reverse and remand for an appropriate consideration of a fee award. Thank you for your time. All right. Thanks to all counsel. We will take the case under advice.